UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ALISHA PRICE,

                        Plaintiff,                                **MEMORANDUM ORDER**
    -against-                                            24-CV-04720 (JMW)

KOHN, SWIFT & GRAF, P.C. *et al.,*

                        Defendants.
----------------------------------------------------------------X

**A P P E A R A N C E S:**

    Robert J. Hantman, Esq.
    **Hantman & Associates**
    1120 Avenue of the Americas
    New York, NY 10036
    *Attorney for Plaintiff*

    Nicholas Peter Chrysanthem, Esq.
    **Marshall Dennehey Warner Coleman & Goggin**
    Wall Street Plaza
    88 Pine Street
    New York, NY 10005
    *Attorney for Defendants*

**WICKS**, Magistrate Judge:

The question before the court is simple, but the answer not so: *should this legal malpractice action remain here in the Eastern District of New York or be transferred instead to the Eastern District of Pennsylvania when the retainer agreement contains a venue clause designating Philadelphia?* (*See* ECF No. 7.) The crux of the dispute centers on the enforceability of the forum selection clause found within the parties' retainer agreement between Defendants and former client Alisha Price ("Plaintiff"). Defendants move for a change of venue pursuant to 28 U.S.C. § 1404 and/or dismissal under Fed. R. Civ. P. 12(b)(3). (ECF No. 7).

Plaintiff opposes on grounds that the forum selection clause was never explained to her and that she was not afforded the opportunity to consult legal counsel to review the clause. (ECF No. 8.) Moreover, Plaintiff asserts that transferring the case to Philadelphia is "unjust" because her entire "frame of reference" was that this case was to be litigated in New York, considering the relevant facts and attorneys involved are located in this district. (ECF No. 8, Pl.'s Aff. at ¶¶ 5-7, 69.)

For the reasons that follow, Defendants' motion for a change of venue pursuant to 28 U.S.C. § 1404 is granted and the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) is denied.[1]

## I. BACKGROUND

Although Plaintiff asserts a myriad of claims[2] that arise out of alleged actions taken by Defendants throughout the course of their representation of Plaintiff, the essence of this action is legal malpractice (*See generally* ECF No. 1.) Specifically, Defendants' representation of Plaintiff stemmed from an FBI investigation in New York relating to the practices of OneTaste, Incorporated which was Plaintiff's former employer and a corporation. (*Id.* at ¶ 1.) OneTaste was

---

[1] Motions to change venue are non-dispositive and thus fall squarely within the scope of motions that a Magistrate J has the authority to decide. *See Salgado v. NYS Dep't of Corrections and Cmty. Supervision*, No. 13-CV-01108-RJA-MJR, 2018 WL 1663255, at *2 (W.D.N.Y. Apr. 6, 2018) ("[T]he majority of recent district court opinions in the Second Circuit conclude that motions for a change of venue are non-dispositive and therefore within the pretrial reference authority of magistrate judges.") (citations omitted); *see also Hashmi v. Etihad Airways P.J.S.C.*, No. 16-CV-04566 (PKC)(RLM), 2016 WL 6916942, at *1 (E.D.N.Y. Nov. 21, 2016) (noting that a § 1404(a) motion is non-dispositive and is properly before a magistrate judge for an order rather than a report and recommendation); *see also Kimble v. Opteon Appraisal, Inc.*, No. 23-cv-6399-FPG-MJP, 2024 WL 4248968, at *3 (W.D.N.Y. Sept. 20, 2024) (concluding that granting or denying a motion to change venue does not divest a federal court of jurisdiction, thus the motion is viewed as non-dispositive).

[2] Plaintiff asserts causes of action for legal malpractice, fraud, intentional infliction of emotional distress, negligent infliction of emotional distress, violation of Judiciary Law § 487, unjust enrichment, breach of fiduciary duties, and breach of contract. (ECF No. 1, at ¶ 1.)

a business devoted to teaching practices of orgasmic meditation or "OM"[3], as well as a variety of educational classes guided by philosophy. (*Id.*) The Complaint alleges that Defendants treated Plaintiff as a "crime victim" for purposes of their own pecuniary benefit for future lucrative litigation against OneTaste, and had done so on prior occasions, to the detriment of their clients including Plaintiff. (*Id.* at ¶¶ 11, 21.)

Plaintiff, a Florida resident, was initially approached by FBI agents in her Florida home and was served with a subpoena directing her to provide information on OneTaste's practices. (*Id.* at ¶¶ 19, 43.) While in Florida, the agents explained that Plaintiff would potentially need to travel to New York to answer investigation questions and provide testimony in court. (*Id.* at ¶ 44.) Immediately thereafter, on or about April 8, 2021, Plaintiff called Defendants, a Philadelphia law firm and lawyer, and they thereafter entered into an agreement for legal services ("Retainer Agreement"). (*Id.* at ¶ 19.) Under the terms of the Retainer Agreement, which was signed by both parties, any dispute that might arise was governed by a forum selection clause. That clause provided, in relevant part, that: "any disputes arising out of or relating to this Agreement shall be resolved in Pennsylvania, through mediation, binding arbitration, or a proceeding in a state or federal court sitting in the City of Philadelphia . . . ." (ECF No. 7, Ex. A.) Moreover, the parties agreed that Philadelphia, Pennsylvania is where they "agree to submit for purposes of personal and subject matter jurisdiction." (*Id.*)

---

[3] "Orgasmic meditation" is a partnered 15-minute mindful and sexually based meditational practice involving partners stroking deliberately to experience connection, pleasure and sensation in the body. *See What is Orgasmic Meditation and How to Practice It?*, Healthnews (updated Sept. 1, 2023), found at https://healthnews.com/womens-health/sexual-health/orgasmic-meditation-how-to-practice-it/; *see also* ECF No. 1, at ¶¶ 15-16. Stories run in *Bloomberg* led to the FBI investigation, ultimate closure of OneTaste, *see* Huet, Ellen (Nov. 13, 2018), "The FBI is Probing OneTaste, a Sexual Wellness Company", Bloomberg.com., and ultimately indictments. *See* Meko, Hurubie (June 6, 2023), "Founder of Sexual Wellness Company Indicted on Forced Labor Charges", N.Y. Times. A Netflix documentary *Orgasm Inc.: The Story of OneTaste* was released in 2022. https://www.netflix.com/title/81487901.

## II. THE LEGAL FRAMEWORK

The Court first considers the enforceability of the parties' forum selection clause, and since it is enforceable, subsequently considers whether transfer is appropriate.

### A. Enforceability of the Forum Selection Clause

The attorneys in this action are governed by the New York Rules of Professional Conduct as the matter was brought before this Court. *See Steele v. Bell*, No. 11 Civ. 9343 (RA), 2012 WL 6641491, at *2 n.1 (S.D.N.Y. Dec. 19, 2012) (citation omitted) ("The New York Rules of Professional Conduct govern the conduct of attorneys in federal courts sitting in New York as well as in New York State courts."); *see also Finkel v. Frattarelli Bros., Inc.*, 740 F. Supp. 2d 368, 372 n.1 (E.D.N.Y. Sept. 15, 2010) (finding that attorneys appearing before the Eastern District of New York are bound by the New York State Rules of Professional Conduct). Indeed, New York recognizes that forum selection clauses within retainer agreements are ethically permissible. *See* N.Y. Cnty. Lawyers Ass'n, Formal Op. 723 (1997) (noting that because the "Code of Professional Responsibility affords substantial flexibility to the lawyer and client in defining the terms and conditions of their relationship" a lawyer may include in a retainer agreement a provision mandating that disputes arising from the agreement be brought in a specified forum or before a particular body).

Courts within the Second Circuit routinely treat requests to enforce a forum selection clause under the context of a motion to dismiss for improper venue. *See Magi XXI, Inc. v. Stato Della Citta Del Vaticano*, 818 F. Supp. 2d 597, 604 (E.D.N.Y. 2011); *see also New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 28 (2d Cir. 1997) (citing cases where forum selection clauses served as the basis for a finding of improper venue). Accordingly, district courts are directed to follow a clearly established framework when initially deciding

whether a forum selection clause is valid and enforceable. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). A forum selection clause is "presumptively enforceable" if it: (1) was reasonably communicated to the party resisting enforcement; (2) has mandatory, rather than permissive force; and (3) covers both the claims and parties involved in the dispute. *Id.*

Once established, the non-movant must overcome this presumption by a "sufficiently strong showing" that enforcing the clause would be unreasonable or unjust, or the clause is to be invalidated for reasons like fraud or overreaching. *Id.* (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). If the non-movant fails to overcome this presumption, the forum selection clause will be deemed valid and enforceable. *See Maersk Line A/S v. Carew*, 588 F. Supp. 3d 493, 504 (S.D.N.Y. 2022). Crucially, a valid and enforceable forum selection clause will control where a party moves for a Rule 12(b)(3) dismissal. *See Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp. 2d 313, 320 (E.D.N.Y. 2010) ("[W]hen a party argues venue is improper and that the case should be dismissed under Rule 12(b) . . . a valid forum selection clause is controlling."). Here, Defendants seek transfer and/or dismissal.

### *i.* *Was the clause reasonably communicated to Plaintiff?*

A forum selection clause is reasonably communicated when it is phrased in "clear and unambiguous language." *Effron v. Sun Line Cruises*, 67 F.3d 7, 9 (2d Cir. 1995). Additionally, when clearly visible, explicit, and located within the main text of the respective contract or agreement, a forum selection clause will be deemed to have been reasonably communicated. *See Magi XXI, Inc.*, 818 F. Supp. 2d at 604 (determining the forum selection clause was reasonably communicated as it "appeared in standard font in the main body of each contract"); *see also Gasland Petroleum, Inc. v. Firestream Worldwide, Inc.*, No. 1:14-CV-597, 2015 WL 2074501, at *5 (N.D.N.Y. May 4, 2015) (concluding that the forum selection clause was reasonably

communicated to plaintiff as the clause was located in "a standard section in the main body of the [] Agreement signed by plaintiff's representative" along with being phrased clearly and unambiguously).

Here, the forum selection clause clearly and unambiguously recites that any disputes between the parties shall be resolved in either a federal or state court sitting in Philadelphia. (ECF No. 7, Ex. A.) Plaintiff does not argue ambiguity. Furthermore, the clause is located in a short paragraph on the second page—the page which both parties signed—of a two-page agreement in identical font to the other terms contained therein. (*See id.*) Plaintiff argues the clause was not reasonably communicated, specifically because Defendants never explained the Agreement to her, Defendants never explained the clause itself, and Plaintiff was not afforded the opportunity to have an attorney independently review the Agreement. (ECF No. 8.) Such an argument lacks merit and has been rejected by courts within this Circuit. *See Gasland Petroleum, Inc.*, 2015 WL 2074501, at *4 (rejecting plaintiff's assertion that because "defendants repeatedly failed to mention the clause's existence" and since "none of defendant's representatives ever pointed out the forum selection clause", the clause was not reasonably communicated). As such, the forum selection clause within the Retainer Agreement was reasonably communicated.[4]

### ii.    *Is the forum selection clause mandatory or permissive?*

A forum selection clause is mandatory, as opposed to permissive, when it "confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *See Phillips*, 494 F.3d at 386; *see also Beatie and Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 393–94 (S.D.N.Y. 2006) (concluding that a retainer agreement contained a mandatory forum selection clause as the clause declared that disputes "shall be resolved" in state or federal

---

[4] Plaintiff neglectfully only argues why the clause was not reasonably communicated to her and that enforcement would be unjust. (*See* ECF No. 10.) Nonetheless, this Court will still analyze all four factors to determine the enforceability of the forum selection clause.

courts in New York). Here, similar to the clause in *Beatie and Osborn*, the clause directs that "any" disputes arising out of or relating to the Agreement "shall be resolved" in Pennsylvania or in a state or federal court sitting in Philadelphia. (ECF No. 7, Ex. A.) Plaintiff does not challenge the forum selection clause on mandatory or permissive grounds. Accordingly, the forum selection clause is mandatory.

### iii. *Are the claims and parties in this suit subject to the forum selection clause?*

In order to determine whether the claims are subject to a forum selection clause, a court must examine the substance of the asserted claims and compare how they relate to the clause's language. *Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 563 (S.D.N.Y. 2013) (concluding that any claim based on a breach of the venture agreement was "plainly subject to the forum-selection clause" as such claims arose from the basis of the contract). Here, the clause applies to "any disputes arising out of or relating to this Agreement." (ECF No. 7, Ex. A.) All causes of action filed in this matter relate to Defendants representation of Plaintiff, representation which is clearly established, outlined, and detailed throughout the Retainer Agreement. (*See id.*) Moreover, the dispute here is between the precise parties that executed the Agreement and subsequently engaged in a lawyer-client relationship. (*See id.*) Plaintiff does not challenge the forum selection clause on coverage grounds. As such, the claims and parties in this action are subject to the forum selection clause.

### iv. *Is the forum selection clause unreasonable or unjust, or the product of fraud or overreaching?*

Where, like here, the forum selection clause is presumptively reasonable, the burden shifts to the non-movant to prove enforcement would be unreasonable. *See Gasland Petroleum, Inc.*, 2015 WL 2074501, at *7. To overcome the high burden of proving the forum selection clause is unenforceable, the non-movant must show: (1) the incorporation of the clause was the

result of fraud or overreach; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcing the clause would contravene a strong public policy of the forum state; or (4) trial in the selected forum would be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court. *Phillips*, 494 F.3d at 392; *Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*, 575 F. Supp. 3d 445, 459 (S.D.N.Y. 2021) (determining that parties seeking to overcome the presumption of enforceability must make a "sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching") (citation omitted).

Here, Plaintiff does not claim fraud or overreach was a factor, nor does she address how applying Pennsylvania law would either be fundamentally unfair or would be contravening the public policy of New York. Rather, Plaintiff argues that enforcement would be unreasonable or unjust because the contracted-for legal services related to a matter pending in this district, the facts and third parties are located in this district, all acts or omissions occurred in this district, and Defendants are admitted to practice law and are active members in bar associations in this district. (ECF No. 8.) Specifically, Plaintiff asserts that her "entire frame of reference" was that the ongoing federal investigation related to New York because "every conversation [she and Defendant] had was in regard to people or proposed events which were in New York." (ECF No. 8, Pl.'s Aff. at ¶¶ 7, 21.) On the other hand, Defendants posit that their office is located in Philadelphia, Plaintiff is a Florida resident, and Plaintiff fails to specify any facts or parties located in this district. (ECF No. 10.)

Plaintiff has not overcome the presumption of enforceability. Here, neither party is located in this district, let alone New York state. Similarly, considering Plaintiff is a Florida resident, she suffers little to no "unfairness" in litigating this matter in Pennsylvania as opposed

to the neighboring state of New York. Moreover, bringing causes of action for legal malpractice and fraud, among others, stemming from an attorney and law firm's actions would be best suited in the forum where the law firm is located, here, Philadelphia. Additionally, Plaintiff's mindset that the case would be brought in New York because she was asked questions about her former employment while living in New York (ECF No. 8, Pl.'s Aff. at ¶ 6), she was threatened to be transported to New York for failure to answer questions (ECF No. 8, Pl.'s Aff. ¶ at 8), and she was told of possibly giving testimony in a New York court (ECF No. 8, Pl.'s Aff. ¶ at 17), does not alter this Court's determination.

Accordingly, because the forum selection clause is valid and enforceable, and Plaintiff has failed to overcome its burden, the forum selection clause controls the parties' dispute, thereby rendering venue proper in Philadelphia, Pennsylvania. The next step then, is to determine whether transfer is appropriate.

## B. Transfer Under Section 1404(a)

"Rather than dismiss an action due to the existence of a valid and enforceable forum selection clause, a court may exercise its discretionary power to transfer the action '[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought or to any district or division to which all parties have consented.'" *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 449 (E.D.N.Y. 2013) (quoting 28 U.S.C. § 1404(a)). District courts possess extremely broad discretion over motions for transferring venue and will analyze the facts on a case-by-case basis, considering notions of convenience and fairness. *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992).

When deciding a 1404(a) transfer motion, a district court must first determine whether the case could have been brought in the proposed transferee district. *Herbert Ltd. P'ship v.*

*Electronic Arts Inc.*, 325 F. Supp. 2d 282, 285–86 (S.D.N.Y. 2004). Once this threshold inquiry is overcome, a district court will subsequently analyze and balance a number of case-specific factors including: (1) the convenience of witnesses and parties; (2) the location of relevant documents and ease of accessibility to these sources of proof; (3) the location of the operative facts; (4) the relative financial means of the parties; (5) the relative familiarity of each district with the governing law; and (6) the weight afforded plaintiff's choice of forum. *N.Y. Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010). No one factor is decisive as district courts maintain discretion when analyzing a motion to transfer venue. *See Erickson Prods. v. MGM Grand Inc. (In re Erickson)*, No. 13-CV-564 (NRB), 2014 WL 12774971, at *3 (S.D.N.Y. June 25, 2014).

### i. *This Action Could Have Been Brought in Philadelphia*

Pursuant to Section 1391(b)(2), a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b)(2). Here, in a legal malpractice action where the law firm being sued for these claims is in Philadelphia, the events and omissions resulting in the malpractice action took place there. Notably, because Plaintiff is a Florida resident, the overwhelming majority of her communications with Defendants were via phone call, including the initial interview (ECF No. 1, at ¶ 55), follow-up calls regarding the alleged ongoing federal investigation (ECF No. 1, at ¶¶ 62-65), and coordinating plans for her to give testimony (ECF No. 1, at ¶¶ 78-79.) As such, the actions or omissions Defendant took occurred in Philadelphia, and thus the current civil action may be brought in Philadelphia.

Because this action could have been brought in Philadelphia, the Court must next determine whether the action should be transferred there. In doing so, as noted above, the Court

has "broad discretion in this determination, and may consider a number of factors relating to convenience and the interests of justice." *Zaltz*, 952 F. Supp. 2d at 459.

  *ii.*  **<u>Convenience to the Parties</u>**

  A forum selection clause is extremely determinative of the convenience to the parties. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) ("The presence of a forum selection clause . . . will be a significant factor that figures centrally in the district court's calculus"); *see Scherillo*, 684 F. Supp. 2d at 320 ("[W]here the parties have agreed upon a forum in a forum-selection clause, as the parties have done here, this factor generally weighs heavily in the adjudication of the case in the chosen forum."); *Orix Credit Alliance, Inc. v. Mid-South Materials Corp.*, 816 F. Supp. 230, 234 (S.D.N.Y. 1993) (noting the parties' expressed preference for a particular venue through a valid forum selection clause is a factor in analyzing convenience to the parties and "the fact that both parties initially accepted the jurisdiction of the courts of New York must count"). In addition to the forum selection clause, district courts will also analyze the location of the parties in relation to the proposed forum. *See Micro-Assist, Inc. v. Cherry Communications, Inc.*, 961 F. Supp. 462, 466 (E.D.N.Y. 1997) (noting that the convenience of parties factor weighed in favor of transferring venue to where the parties' primary place of business is).

  The parties are subject to a valid and enforceable forum selection clause. *See supra.* Such decisions by the parties to enter into an agreement binding them to Philadelphia is as a significant factor and must count in the Court's transfer analysis. Furthermore, because Plaintiff is a resident of Florida, and Defendants maintain a principal place of business in Philadelphia, convenience weighs in favor of transferring to Philadelphia. Indeed, Plaintiff has failed to

11

establish why a transfer to Philadelphia would be less convenient to her any more than litigating this matter in New York would be.

Furthermore, though the convenience to witnesses is often considered alongside convenience to the parties, an analysis of the former is unnecessary. *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978) ("When a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover."); *see also Beatie & Osborn LLP*, 431 F. Supp. 2d at 396 ("A party moving to transfer on the ground that witnesses will be inconvenienced is obliged to name the witnesses who will be appearing and describe their testimony so that the court may measure the inconvenience caused by locating a lawsuit in a particular forum.") (internal citations and quotation marks omitted). Here, neither party has provided the detail necessary to assess the importance of any potential witness. Accordingly, though disregarding the convenience of the witnesses' factor as inapplicable, the convenience of the parties factor weighs strongly in favor of transfer.

> iii. ***Location of Relevant Documents and Ease of Accessibility to These Sources of Proof***

Courts within the Second Circuit generally view the ease and location of relevant documents factor as a neutral one in light of the modern and advanced technological age where access to documents has become increasingly easier. *Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."). Indeed with document sharing ESI platforms, as well as the availability of remote depositions, this becomes less of a factor. Nonetheless, one district may still favor transfer depending on the types of documents and underlying causes of action. *See Nat'l Union Fire Ins.*

*Co. of Pittsburgh, PA v. St. Paul Fire and Marine Ins. Co.*, No. 12 Civ. 1250, 2012 WL 1829589 (PKC)(RCE), at *4 (S.D.N.Y. May 11, 2012) (concluding that although in "an era of electronic documents [and] easy copying", the location of the insurance policy, court documents from an underlying action, and correspondence between parties in the underlying action found in a particular venue weighed in favor of transfer). Accordingly, absent a "detailed showing" of the burden that the moving party would incur absent transfer, this factor is afforded little weight. *See Larew v. Larew*, No. 11 Civ. 5771 (BSJ)(GWG), 2012 WL 87616, at *5 (S.D.N.Y. Jan. 10, 2012).

Here, like in *National Union*, the FBI investigation that prompted Plaintiff to retain Defendants in the first place, and documents and transcripts relating to such investigation, are likely found in this district. (ECF No. 8, Pl.'s Aff. at ¶¶ 28, 34, 45.) In addition, Plaintiff's communications with a victim specialist located in New York, though limited, would likely be in New York as well. (*Id.* at ¶ 55.) Conversely, documents relevant to the representation of Plaintiff are likely found within Philadelphia—the location of Defendants' law firm. Accordingly, given most, if not all, of this information could be obtained through electronic means, this factor is afforded little weight in the Court's transfer analysis.

### iv. *Location of Operative Facts*

When determining the locus of operative facts, courts will turn to the "site of the events from which the claim arises." *See 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 134 (S.D.N.Y. 1994). Indeed, courts often look to where a party resides, has headquarters, or maintains its personal place of business when finding the relevant location of operative facts. *See Zaltz*, 952 F. Supp. 2d at 460 (holding that the locus of operative facts was

13

correctly determined to be where the defendant's personal place of business was because this was where the alleged wrongful conduct derived from).

Here, Plaintiff asserts, in conclusory fashion, that New York is where "all of the information relevant to the defendants misconduct" exists and where she "can adequately conduct third party discovery". (ECF No. 8, Pl.'s Aff. at ¶¶ 69, 71.) Plaintiff, however, fails to provide any detail as to what "relevant" information she is seeking in New York or from whom in New York discovery is sought. If anything, the alleged actions rising to the level of legal malpractice stem from the acts taken towards Plaintiff while Defendants were in Philadelphia, their principal place of business. Accordingly, this factor weighs in favor of transferring venue.

### v. *Relative Financial Means of the Parties*

In order for the Court to consider the relative financial means of the parties, they must submit some proof, either through documentation or non-conclusory allegations, that transferring venue would be "prohibitively expensive". *See Scherillo*, 684 F. Supp. 2d at 329 (holding the relative means of the parties was an insignificant factor where plaintiff merely produced conclusory allegations that litigating the case in New Jersey, rather than New York, would be burdensomely expensive). "Absent any information demonstrating that the plaintiffs would be financially prejudiced by having to litigate in [another forum], this factor adds nothing to [the court's] analysis." *Quan v. Computer Scis. Corp.*, No. CV 06-3927 (CBA), 2008 WL 89679, at *7 (E.D.N.Y. Jan. 7, 2008) (finding the relative means factor was insignificant where plaintiff failed to argue that litigating the case in California was more expensive than litigating the case in New York).

Here, the sole reference Plaintiff makes relating to her financial means is when she expressed concern to Defendant about not being able to pay for his legal services should she

have to participate in a trial in New York. (ECF No. 8, Pl.'s Aff. at ¶ 49.) Not only did Plaintiff not travel to New York for any trial, but also she neglected to provide this Court with any proof as to why litigating this case in Philadelphia rather than New York would financially impact her. Therefore, this factor is insignificant and, like in *Quan*, "adds nothing" toward this Court's venue analysis.

### vi. *Relative Familiarity of Each District with the Governing Law*

With respect to the relative familiarity of each district with governing law, where both courts are equally equipped to handle the causes of action, this factor is a neutral one. *See Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 650–51 (S.D.N.Y. 2008) (illustrating where a court turns to other more significant factors where both potential districts were "well-equipped" to preside over the claims); *see also Goggins v. Alliance Cap. Mgmt., L.P.*, 279 F. Supp. 2d 228, 234 (S.D.N.Y. 2003) (finding the familiarity with applicable law was "neutral with respect to transfer" since either forum was "equally capable" to hear and decide the issues).

Here, nothing in the record indicates why a state or federal court sitting in Philadelphia would be more or less "equipped" than a New York state or federal court to handle these claims. Accordingly, this is a neutral factor.

### vii. *Weight Afforded Plaintiff's Choice of Forum*

Though a plaintiff's choice of forum is ordinarily given some deference, such deference is significantly diminished where other factors, like the location of operative facts and the existence of a valid forum selection clause, warrant a transfer. *See Royal Ins. Co. of America v. U.S.*, 998 F. Supp. 351, 353 (S.D.N.Y. 1998) ("The weight accorded to a plaintiff's choice of venue is significantly diminished, however, where the operative facts have no connection to the chosen district"); *see also Scherillo*, 684 F. Supp. 2d at 329 (finding that, though entitled to some

15

consideration, plaintiff's choice of forum was a secondary consideration in comparison to the locus of operative facts, where the relevant documents are, and the presence of a valid and enforceable forum selection clause).

The location of operative facts factor weighs heavily in favor of transfer and perhaps even more importantly, the parties entered into a valid and enforceable forum selection clause in the retainer agreement. As such, deference to the Plaintiff's choice of forum would be inappropriate in light of these other factors.

### III.    CONCLUSION

Based upon the foregoing, this Court, in exercising its discretion and considering notions of convenience and interests of justice to the parties, finds that a transfer of venue to the Eastern District of Pennsylvania under 28 U.S.C. § 1404(a) is proper. Accordingly, Defendants' motion for transfer of venue (ECF No. 7) is granted, and the Clerk of the Court is hereby directed to transfer this case to the Eastern District of Pennsylvania.

Dated: Central Islip, New York
October 18, 2024

SO ORDERED:

/s/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge